MILLER (DUNBAR v.). See Case No. 4,130.

## Case No. 9,567.

### MILLER et al. v. The EASTERN RAILROAD.

[27 Leg. Int. 188; [1] 7 Phila. 597.]

District Court, E. D. Pennsylvania. May 12, 1870.

TOWAGE—SKILL REQUISITE—CAUTION.

Proper skill and caution in performing towage service must be understood as such skill and

1 [Reprinted from 27 Leg. Int. 188, by permission.]

caution as persons of ordinary prudence, duly qualified for the business of towage, and exercising an honest care of the interests confided to them, ordinarily use.

On the 7th of December, 1869, the above tug, having made up a tow of sixteen barges, (in four tiers astern,) proceeded to tow the same to the locks of the Delaware and Raritan Canal. The tow was prepared to start the day before, but owing to the threatening appearance of the weather, it was deferred until the 7th; and although even then the weather was doubtful, and blowing from the northeast, a start was made with the wind increasing. After proceeding a short distance, the navigator of the tug determined to return, and in turning the tug and tow for that purpose, the "Tinney," (one of the barges in tow,) an undecked boat, owned by the libellant, sunk. She was the starboard or weather barge of the tier, next the tug, and consequently the most exposed of any of the tow. The "Tinney" was subsequently towed ashore where she now lies.

The learned judge of the admiralty, in referring the case to nautical assessors, Captains John H. Young and Thomas G. Munroe, said: "Considering the weather at the time of starting, the particular service intended, the arrangement of the tows, and the relative position of the Tinney, taking her construction into view, and attributing the proper effect to any other circumstances which the assessors may adjudge material, did the tug, in their opinion, use proper skill and caution, in undertaking the towage of such a barge as the Tinney, as it was undertaken? The words 'proper skill and caution' will be understood by the assessors to mean such skill and caution as persons of ordinary prudence, duly qualified for the business of towage, and exercising an honest care of the interests confided to them, ordinarily use."

Thereupon the assessors reported as follows, viz.: "We are of opinion that the navigator of the tug did not use proper skill and caution in arranging the tow, and did not take into proper consideration the construction of the 'Tinney.' The fact that the Tinney was not a decked boat rendered it prudent that her position should have been among the best, instead of which it was unquestionably the very worst of any boat in the tow. While there were several decked boats among the tow, it does not appear that there were any arrangements made to place them in the more exposed parts of the tow. Again, the master of the tug did not use good judgment in electing to start with so large a tow as sixteen barges, at that season of the year, with the threatening weather that then prevailed. He was a man of long experience in that business, had entire control, accountable to none but his employers, fully aware, or should have been, of the ability of his tug to perform the service of the day, and to carry his tow safely through. It appears in the testimony, that the said tug had previously towed as many as twenty-eight boats at one time without assistance, yet it does not appear that those boats were loaded, and the assessors feel constrained to assume that they were not loaded; the more particularily so, when it is borne in mind, that she had a tug to assist her with only sixteen boats. In conclusion, we are of opinion, that the captain of the tug erred with regard to the ability of his tug to carry so heavy a tow through safely under the then existing bad weather; he also erred in not placing some of the decked boats in the more exposed parts of the tow, as he had a perfect right to do. Any curtailment of the tug master's authority, with regard to placing, arranging, making up, or starting the tow, according to his own judgment, would lead to so many difficulties, that all vessels yield implicit obedience to his orders."

J. Hill Martin, for libellants.
A. I. Fish, for respondent.

CADWALADER, District Judge. If either party has the right to complain of my consulting assessors in this case, the libellant is the party. If the assessors had answered my question differently, I might not have been able to decide the case without a commission to new assessors. As the matter stands, I concur in the opinion of the assessors.

Decree for libellant.